UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In re: <br><br> DANNY W. ADEN and ROZELL J. ADEN, <br><br>     Debtors. <br>_____ <br><br> DANNY WAYNE ADEN and ROZELL J ADEN, <br><br>     Appellants, <br><br>  v. <br><br> JEREMY GUGINO, TRUSTEE, <br><br>     Appellee. <br>_____ <br> *Consolidated with:* <br><br> In re: <br><br> JUDITH CLARICE SATHER, <br><br>     Debtor. <br>_____ <br> JUDITH CLARICE SATHER, <br><br>     Appellant, <br><br>  v. <br><br> JEREMY GUGINO, TRUSTEE, <br><br>     Appellee. | Case No. 1:12-cv-00191-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The debtors appeal from the bankruptcy court's decision sustaining the trustee's objections to the debtors' claimed exemptions in annuity contracts. For the reasons explained below, the Court will reverse.

## BACKGROUND

The debtors in these cases purchased annuity contracts before filing their bankruptcy petitions. The common theme in the annuity contracts is that they contain different payout options and, at the time they filed their bankruptcy petitions, the debtors had not selected any particular payout option. The more specific details follow.

1.   **The Sather Annuity**

In June 1999, Judith Sather purchased a "John Hancock Venture Annuity."[1] It provided Sather the option – exercisable in June 2012 and each June after that until 2036 – to elect receiving a ten-year stream of monthly payments during her lifetime, with a minimum guaranteed payment of around $325.

Sather filed her bankruptcy petition in October 2011, a few months shy of June 2012. At that time, she had not yet exercised her option to begin receiving the ten-year stream of payments. Sather claimed the annuity was exempt under Idaho Code § 41-1836.

---

[1] The Sather annuity contracts are not in the record. Instead, the parties rely on stipulated facts relevant to these contracts. *See Sather ER,* Dkt. 15, at 32, ¶ 2.

2.      **The Aden Annuities**[2]

There are four annuities at issue in the Aden bankruptcy. Danny Aden acquired two annuities in January 2009 from the Principal Financial Group. Together, these annuities were worth around $135,000 in August 2011, when the Adens filed bankruptcy. Mr. Aden also received two other annuities before filing bankruptcy – totaling around $10,000 in value – as bonuses related to his employment.

The parties stipulated that when the Adens filed bankruptcy, the annuities had not yet been set up to make periodic payments. The parties also stipulated that each of the annuity policies had a cash-surrender option "in which the Debtors could surrender some part of the policies for a Cash Surrender Value . . . which is defined as the accumulated value on the surrender date less any surrender charge, which varies by the date of the surrender and the age of the annuity." *Aden ER,* Dkt. 12 at 29, ¶ 10. Lastly, the parties stipulated that if Mr. Aden did not elect a payout date and method by a certain date, the annuity companies would select a payout method and he would be bound by that choice.

### STANDARD OF REVIEW

District courts review bankruptcy court decisions in the same manner as would the Ninth Circuit. *See In re George*, 177 F.3d 885, 887 (9th Cir. 1999). Thus, the Court reviews the bankruptcy court's conclusions of law de novo and its factual findings for

---

[2] The parties stipulated to the facts relevant to the Aden annuities. *See Stipulated Facts, Aden ER,* Dkt. 12, at 32-35. Additionally, portions of the annuity contracts (or statements related to the annuities) are in the record. *See id.* at 151-70.

clear error. *Id*. Mixed questions of law and fact are reviewed de novo. *In re Chang*, 163 F.3d 1138, 1140 (9th Cir. 1998).

## ANALYSIS

When a debtor files a bankruptcy petition, a bankruptcy estate is created, consisting of all property in which the debtor has a legal or equitable interest. 11 U.S.C. § 541. The debtor may exempt property included within this estate under applicable federal or state law. The Bankruptcy Code gives each state an option – (1) it can allow debtors to exempt property included in a federal laundry list of exemptions, or (2) it can allow debtors to rely on state and federal law other than this laundry list for allowable exemptions. *See* 11 U.S.C. § 522(b)(2); § 522 (d); *see generally In re Antonie*, 432 B.R. 843, 845 (Bankr. D. Idaho 2010). Idaho has chosen the second option, *see* Idaho Code § 11-609, and the exemption at issue here will thus turn on the proper interpretation of Idaho statutory law – specifically Idaho Code § 41-1836.

The trustee bears the burden of proving that the annuities are not exempt under Idaho Code § 41-1836. *See* Fed. R. Bankr. P. 4003(c). Additionally, the Court must liberally construe exemptions in favor of the debtor. *See Lang v. Nowak (In re Tober)*, 688 F.3d 1160, 1163 (9th Cir. 2012). Thus, if "the text of a statutory exemption is ambiguous as to whether it applies, the debtor is entitled to the exemption." *Id.*

The trustee makes two arguments on appeal: (1) that the contracts are not annuities at all; and (2) even if they are annuities, the debtors are still not entitled to the exemption because they have not yet elected any specific payout option available under

the contracts.

**1.       Are the Contracts Annuities?**

The first question – whether the contracts are annuities in the first place – is the most difficult.  Idaho Code § 41-1386(3) defines annuity contracts, and the key requirement is that there must be an "obligation to pay certain sums at stated times."  In full, the definition is:

> An annuity contract within the meaning of this section shall be any obligation to pay certain sums at stated times, during life or lives, or for a specified term or terms, issued for a valuable consideration, regardless of whether or not such sums are payable to one (1) or more persons, jointly or otherwise, but does not include payments under life insurance contracts at stated times during life or lives, or for a specified term or terms.

Idaho Code § 41-1836(3).

The trustee argues that the Aden and Sather contracts are not annuities because the annuity companies are not yet obligated to pay certain sums at stated times.  More specifically, the trustee says no such obligation has arisen because the debtors have not chosen from various payout options available to them.

In *In re Wiley* and *In re Harter* – two decisions the bankruptcy court in this case relied upon – the bankruptcy court expressed concerns about whether a purported annuity contract with a lump-sum, cash-surrender option constitutes a true annuity.[3]  *See In re Wiley*, 469 B.R. 326 (Bankr. D. Idaho 2012) (citing *In re Harter,* 94 IBCR 2 (Bankr. D.

---

[3] It is not entirely clear that the *Sather* annuities contain a cash-surrender option.  The stipulated facts do not mention such an option, but the trustee referred to such an option at the hearing.  *See Sather ER,* Dkt. 15, at 79:16-18.  As noted, the annuity contracts themselves are not in the record.

Idaho 1994)).[4]  Under this option, annuitants can forego a promised payment stream and get their money back immediately, less a surrender charge.  In *In re Harter*, the bankruptcy court held that such an option meant a "so-called annuity" was not an annuity at all.  *Harter,* 94 IBCR at 2 ("since the Debtor retains the unrestricted right to receive payment in whole or part of the funds on deposit, it is not an annuity for purposes of the exemption statute.").

For the reasons explained below, the Court disagrees.

### A.  Cash-Surrender Options

Admittedly, it is somewhat counter-intuitive to conclude that an exempt annuity can contain a lump-sum, cash-surrender option.  After all, with this type of option in place, nothing prevents debtors from getting most of their cash back tomorrow.[5]  *See Wiley,* 469 B.R. at 334 ("Debtors made no election, and are thus free to receive a lump sum of the near-total amount they invested tomorrow if they choose.").

But when Idaho's exemption statute (Idaho Code § 41-1836) is read in its entirety, it is apparent that annuity contracts can contain cash-surrender options and still fit within the statutory definition.  As noted above, the starting point is sub-section (3), which

---

[4] In *Wiley,* the trustee explicitly conceded that an annuity contract with a cash-surrender option fit the statutory definition of an annuity contract.  The Court, therefore, was not called upon to determine whether such an annuity fit within Idaho Code § 41-1836(3)'s statutory definition of an annuity contract.

[5] Typically, an annuitant who exercises a cash-surrender option must pay surrender charges.  Such was the case here, at least with regard to the Aden annuities.  The Aden parties stipulated that "[e]ach of the annuity policies contains options in which the Debtors could surrender some part of their policies for a Cash Surrender Value." *Aden Stip.* ¶ 10.   The record is not clear that the Sather annuities had a cash-surrender option (or associated cash-surrender charges), since those annuities are not part of the record.

MEMORANDUM DECISION & ORDER – 6

essentially defines annuity contracts as any obligation to pay certain sums at stated times. That sub-section says nothing about options. *See* Idaho Code § 41-1836(3). But an earlier sub-section, § (1)(a), says creditors cannot force annuitants to exercise any "rights, power, or *options*" under annuity contracts. *Id.* § (1)(a) (emphasis added). So the legislature obviously believed exempt annuities could contain options of some sort.

The question, of course, is what options did the legislature have in mind? "In recent decades, annuities have become vastly more complex." *In re May*, 478 B.R. 431, 434 (Bankr. D. Colo. 2012). So current annuities may contain options that did not typically exist in annuity contracts in 1961, when the Idaho legislature enacted § 41-1836. But, on the other hand, the trustee does not argue that the particular options at issue here are new, or that the legislature did not mean for exempt annuity contracts to include them. And other parts of the Code suggest otherwise. First, the legislature has twice amended § 41-1836 – in 2001 and again in 2003. The amendments did not deal with the definition of an annuity contract,[6] but still, the legislature had an opportunity to tighten up the exemption statute at those times.

Second, within the same title of the Idaho Code, in 2010 the legislature added § 41-1941, which specifies what sellers must disclose to consumers who buy annuities. *See* Idaho Code § 41-1941(2). Among other things, the seller must disclose "[t]he periodic income options both on a guaranteed and nonguaranteed basis" and "[a]ny value

---

[6] The 2001 amendment increased the monthly limit on exemption of benefits "presently due and payable" from $350 to $1250. *See* 2001 Idaho Session Laws, ch. 285 §1. The 2003 amendment added sub-section (4) to § 41-1836. *See* 2003 Idaho Session Laws, ch. 248, § 4. That subsection is not relevant here.

MEMORANDUM DECISION & ORDER – 7

reductions caused by withdrawals from or surrender of the contract." *Id.* § (7)(c)(iii) and (iv). So it would seem the legislature is well aware that annuities contain all sorts of complex options – including a variety of payout options which may include a cash-surrender options. Nonetheless, it has not taken any action to tighten or clarify the definition of an "annuity contract" in § 41-1836(3).

And, on a more basic level, if a party obligates itself to pay certain sums at stated times – and it must make those payments unless the annuitant exercises a cash-surrender option – there is an obligation in place. Granted, the obligation can be seen as a revocable one, but it is an obligation nonetheless, particularly if the exemption statute is construed liberally in favor of the debtor. After all, the statute does say "*any* obligation" to pay certain sums at stated times is an annuity contract. Idaho Code § 41-1836(3) (emphasis added). It does not say annuity contracts cannot have cash-surrender options.

An Iowa federal district court pointed to similar legislative silence (that is, the failure to specifically address the existence of a cash-surrender options) and concluded that an annuity contract with a cash-surrender option could still be exempt under a state-law exemption statute.[7] *See Lilienthal v. Prod. Credit Ass'n*, 72 B.R. 277 (S.D. Iowa 1987). The Iowa district court approvingly quoted an Eighth Circuit case, which noted that: "The Iowa statute does not say that the exemption is contingent upon the absence

---

[7] The Iowa exemption statute at issue provided an exemption for "[a] payment under a[n] . . . annuity . . . on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." *Id.* (quoting Iowa Code § 627.6(9)(e)).

from the policy of a right to accept a surrender value or of the right to change the beneficiary." *Jens v. Davis,* 280 F. 706, 708 (8th Cir. 1992) (quoted with approval in *Westinghouse Credit Corp. v. Crotts,* 98 N.W.3d 843 (1959) (interpreting an insurance exemption statute) and again in *Lilienthal*, 72 B.R. at 279)).

A recent Colorado bankruptcy court decision – *In re May,* 478 B.R. 431 (Bankr. D. Colo. 2012) – is also instructive. *May* held that the mere presence of an unexercised lump-sum payment option did not mean the subject annuity was no longer exempt under Colorado's exemption statute.[8] *Id.* at 439-40.  The court determined that the legislature's intent in enacting the statute at issue was to encourage individuals to provide for their families and dependents through life insurance and annuity products.  As the court put it:

> Undoubtedly, the Colorado Legislature in 1925 had no idea how complex annuities would become, . . . .  In particular, the legislature would not likely have envisioned that insurance policies and annuities alike would be drafted with many payment options available. But if the underlying policy is to encourage the use of these proceeds as a means of continuing support, then the mere presence of a lump sum option, that has not been exercised, in the terms of the policy or contract should not frustrate this underlying legislative policy.

*Id.* at 439.

Here, the parties do not point to any legislative history for Idaho Code § 41-1836.  But based on the language of the statute itself, it seems clear that the

---

[8] The Colorado statute does not separately define annuities.  It provides: "Whenever, under the terms of any annuity or policy of life insurance . . . the proceeds are retained by such company . . ., no person, other than the insured . . . shall be permitted to . . . assign the same . . . ; and . . . no payments of interest or of principal shall be in any way subject to such persons debts, . . . ."  Colo. Rev. Stat. § 10-7-106.

MEMORANDUM DECISION & ORDER – 9

legislature intended to allow debtors – not creditors – to decide whether and when to exercise options contained within annuity contracts. *Cf. May,* 478 B.R at 439 (construing the language of the statute to determine intent, in the absence of legislative history).

### B. Pay-Out Options

The same holds true for a debtor's ability to choose between different payout options. The mere fact that a debtor may choose between different payment streams does not mean the contract cannot be an "annuity" for purposes of § 41-1836(3). Significantly, in these cases, the trustee has not put forth any evidence that the annuity companies' obligation to make periodic payments would evaporate if the debtors fail to pick a specific payout option. In *Aden*, the parties stipulated that although Mr. Aden had not yet elected a specific payout option, the annuity companies would eventually be obligated to make payments according to a default method.[9] So, again, the underlying obligation to pay certain sums at stated times is contained in the contract.

Of course there is another valid way of looking at the issue. One could easily conclude that such arrangements are not annuity contracts at all – they are just options to

---

[9] The *Sather* stipulation is not as clear because it does not directly state what happens if Sather does nothing. Rather, the parties stipulated that the "Annuity provides the Debtor the option, exercisable June 29, 2012, and each year thereafter, until June 29, 2036, to elect to receive monthly payments during her lifetime, with a minimum guaranteed payment of $323.28 per month over a term of ten years." *Sather ER,* Dkt. 15, at 33, ¶ 6 (emphasis added). The contracts themselves are not in the record, so the Court cannot look there. Nonetheless, in the *Sather* hearing, the trustee explicitly conceded that the Sather contract was an annuity and he did not provide the contracts to the bankruptcy court or this Court. On this record, the Court cannot conclude that the trustee met his burden of demonstrating the Sather annuity does not fit the statutory definition.

MEMORANDUM DECISION & ORDER – 10

acquire annuities at some point in the future, when the debtor actually picks a payout schedule. But the Court must construe the exemption statute liberally in favor of the debtors. *Lang v. Nowak (In re Tober)*, 688 F.3d 1160, 1163 (9th Cir. 2012). And as already noted, the exemption statute here expressly contemplates that annuity contracts may provide options to the debtor. So there is room to conclude that the debtor's ability to pick between different options for the payout stream will not destroy an otherwise exempt annuity contract.

If the Idaho legislature wishes to tighten the exemption for annuity contracts, it must do so more plainly. Compare, for example, Idaho's annuity exemption statute to Tennessee's, which provides that annuities are exempt "only to the extent debtor has no right or option to receive them except as monthly or other periodic payments beginning at or after age fifty-eight (58)." Tenn. Code Ann. § 26-2-11(1)(D). The Tennessee statute goes on to provide that "Assets of such funds or plans are not exempt if the debtor may, at the debtor's option, accelerate payment so as to receive payments in a lump sum . . . ." *Id.*

Idaho's Code does not say anything like that. To the contrary, on the subject of options, it just says exempt annuities can have them. The Court therefore concludes that the Sather and Aden annuities are "annuity contracts" within the meaning of Idaho Code § 41-1836(3).

**2.      Assuming the Contracts are Annuities, Are They Exempt?**

Having decided that the annuity contracts fit the statutory definition, the next question is whether the debtors' failure to elect a payout option somehow prevents them from claiming the exemption. The starting point for this question is sub-section (1) of the exemption statute, which provides:

> The benefits, rights, privileges and options which under any annuity contract . . . are *due or prospectively due* the annuitant, shall not be subject to execution nor shall the annuitant be compelled to exercise any such rights, powers, or options, nor shall creditors be allowed to interfere with or terminate the contract, except . . . .

Idaho Code § 41-1836(1) (emphasis added). The statute then lists exceptions to the exemption, including this one, for benefits "presently due and payable" to the annuitant:

> The total exemption of benefits *presently due and payable* to any annuitant periodically or at stated times under all annuity contracts under which he is an annuitant, shall not at any time exceed one thousand two hundred fifty dollars ($1,250) per month for the length of time represented by such installments, and that such periodic payments in excess of one thousand two hundred fifty dollars ($1,250) per month shall be subject to garnishee execution to the same extent as are wages and salaries.

Idaho Code § 41-1836(1)(b) (emphasis added).

To summarize these two sub-sections, then, creditors cannot reach the "benefits, rights and privileges" of any annuity contract, whether it is "due or prospectively due" to the annuitant, subject to certain exceptions. One such exception provides that if the benefits are "presently due and payable," then the exemption is limited to $1250 per month. And creditors can garnish payments "presently due and owing" just like wages and salaries if (a) the annuity payments exceed $1250 per month; and (b) the court

MEMORANDUM DECISION & ORDER – 12

determines the judgment debtor does not reasonably require any portion of the excess. *See* Idaho Code § 41-1836(1)(b) and (c).

So the $1250 monthly limitation comes into play only if the annuitant is "presently" receiving benefits. If benefits are only "prospectively" due, the $1250 limitation is not yet relevant, and creditors have no right to reach into the future and claw back payments to satisfy the annuitant's debts. After all, the statute unequivocally says benefits "prospectively due the annuitant, shall not be subject to execution . . . ." *Id.* The statute further clarifies that creditors cannot force annuitants to terminate annuity contracts or exercise "rights, powers, or options" thereunder. *Id.*

The bankruptcy court viewed the exemption statute differently. It concluded that all payments owing under annuities – not just those "presently due and owing" – must be quantified so the court can determine if payments will exceed the $1250 monthly cap laid out in sub-section (1)(b). This view has its roots in cases such as *In re Nielsen*, Case No. 97-1116, 97.4 IBCR 107 (Bankr. D. Idaho 1997) (Hagan, J.), which held that annuity payments scheduled to become due nine years after the debtor filed bankruptcy should be quantified and – to the extent they exceeded the monthly statutory limit – turned over to the trustee. Debtors have thus been forced to liquidate annuities and turn over a portion of the proceeds to the trustee. *See id.* (cited with approval in *In re Wiley*, 469 B.R. 326, 331(Bankr. D. Idaho 2012)).

Under *Nielsen* and its progeny, when a debtor claims an annuity is exempt under Idaho Code § 41-1836, the first order of business is to quantify the annuity – including all

future scheduled payments. *See, e.g., Wiley*, 469 B.R. at 333. But in this case, as already noted, the debtors had not chosen from various payout options allowed under their annuity contracts. So nobody knows what the future payments will be. The bankruptcy court thus found it could not do its job. As the court put it, "By their inaction, Debtors have rendered the Court unable to decide whether their exemption claim on annuity benefits conforms to the limits in the Idaho statute in any amount." *Aden ER,* Dkt. 12, at 69. *Accord Wiley*, 469 B.R. at 333; *see also Sather ER,* Dkt. 15, at 64 (summary order denying debtor's exemption and expressly adopting *In re Wiley*).

But courts are not obligated (or authorized) to quantify future annuity payments. As explained, Idaho's exemption statute prohibits creditors from executing on future annuity payments. Courts are authorized to quantify only those payments presently due and owing. No annuity payments are "presently due and owing" either Ms. Sather or the Adens. The trustee's objections therefore fail.

There are many legitimate policy reasons for adopting a contrary interpretation of the statute. For example, as suggested by the bankruptcy court in *Wiley*,

> Simply put, if the exemption applies where no election has been made, annuities would quickly become a convenient means of shielding large sums by a debtor in financial straits, whether those monies are needed for the support of the debtor or not, all at the expense of creditors. If the Legislature intended that debtors have access to this sort of bankruptcy planning tool it should say so clearly . . . .

*Aden ER,* Dkt. 12 at 88. The problem with this observation is that it suggests the exemption should be construed narrowly when, in fact, the opposite is true – the court must liberally construe exemptions *in favor* of the debtor. *See Lang v. Nowak (In re*

MEMORANDUM DECISION & ORDER – 14

*Tober)*, 688 F.3d 1160, 1163 (9th Cir. 2012). Moreover the potential for abuse is ameliorated by at least two factors: (1) the annuity-exemption statute itself has a fraud exception, s*ee* Idaho Code § 41-1836(1)(a); and (2) the Idaho legislature is, of course, free to modify or eliminate the exemption if presented with evidence of its misuse.

## CONCLUSION

The bankrupty court's decisions in the *Sather* and *Aden* cases are **REVERSED**.

DATED: November 29, 2012

Honorable B. Lynn Winmill
Chief U. S. District Judge